```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                     FAYETTEVILLE DIVISION

TYSON FOODS, INC.                                        PLAINTIFF


v.                          Case No. 06-5172


VAN LUIN FOODS USA, INC.                                 DEFENDANT
```
                                **ORDER**

   Now on the 16th day of January, 2007, comes on for consideration the **Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction (doc. #5)** and the **Motion for More Definite Statement as to Basis for Subject Matter Jurisdiction (doc. #7)** of Van Luin Foods USA, Inc.  The Court, being well and sufficiently advised, finds and orders as follows with respect thereto:

   1.   The plaintiff, Tyson Foods, Inc. ("Tyson"), filed this action on September 15, 2006 against defendant Van Luin Foods USA, Inc. ("Van Luin") seeking a declaratory judgment and preliminary injunctive relief.  At issue in the lawsuit is an offer by Van Luin to purchase frozen chicken leg quarters from Tyson.

   Van Luin now moves to dismiss this matter, asserting that the Court lacks personal and subject matter jurisdiction. Additionally, Van Luin seeks to require Tyson to make a more definite statement of its basis for claiming that this Court has subject matter jurisdiction in this matter.

2.  "When personal jurisdiction is challenged, plaintiff has the burden to show that jurisdiction exists."  Burlington Industries Inc. v. Maples Industries, 97 F.3d 1100, 1102 (8th Cir. 1996) (citation omitted).  "[T]he burden does not shift to the party challenging jurisdiction."  Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir.), *cert. denied* 506 U.S. 908 (1992), citing Newhard, Cook & Co. v. Inspired Life Centers, Inc., 895 F.2d 1226, 1228 (8th Cir. 1990).

Clearly, Tyson, as the plaintiff asserting it, has the burden of making a prima facie showing of this Court's jurisdiction over Van Luin.  *See* First National Bank of Lewisville, Arkansas v. First National Bank of Clinton, Kentucky, 258 F.3d 727, 729 (8th Cir. 2001); Falkirk Min. Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir. 1990).  To ascertain whether jurisdiction exists, one must determine "(1) whether a forum's long-arm statute permits the assertion of jurisdiction and (2) whether assertion of personal jurisdiction violates federal due process."  Graphics Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1385 (Fed. Cir. 1998)(footnote omitted).

Arkansas' long-arm statute permits the assertion of jurisdiction to the extent permitted by the Due Process Clause. Ark. Code Ann. § 16-4-101(B) (Supp. 1995); *see also* Kilcrease v. Butler, 293 Ark. 454, 455, 739 S.W.2d 139 (1987).  Therefore, the

sole inquiry this Court need make is whether the exercise of personal jurisdiction is consistent with the due process clause[1]. *See* 3D Systems, Inc. V. Aarotech Laboratories, Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998); *see also* Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)(quotation omitted). Due process requires sufficient "minimum contacts" between the defendant and the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 291-92 (1980).

To satisfy its burden, a plaintiff asserting jurisdiction must establish either specific jurisdiction or general jurisdiction. Merck & Co., Inc. v. Barr Lab., Inc., 179 F.Supp.2d 368, 371 (D.Del. 2002); Mason v. Mooney Aircraft Corp., 2003 WL 21244160 (W.D. Missouri)(Slip Opinion)(May 8, 2003)(explaining differences in two concepts).

A. General Personal Jurisdiction -- General jurisdiction arises when the defendant has continuous and systematic contacts

---

[1] Courts are to apply the "minimum contacts" standard developed in International Shoe and its progeny. Hilderbrand v. Steck Mfg. Co., Inc., 279 F.Supp.2d 1351, 1355 (Fed.Cir. Feb. 7, 2002).

3

with the state, irrespective of whether defendant's connections are related to the particular cause of action. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Due process focuses on the fundamental fairness of exercising jurisdiction over a nonresident defendant, and therefore, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

The United States Supreme Court has held that to maintain general jurisdiction over a foreign defendant, the facts must establish "substantial" or "continuous and systematic general business contacts" with the forum state. Helicopteros, 466 U.S. at 416. Such affiliations are construed in light of the Due Process Clause which permits the Court to exercise jurisdiction only if doing so would not "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). That is, a defendant must "reasonably anticipate being haled into court" in the remote forum. World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980). While lack of physical presence in a state cannot alone defeat jurisdiction, "random," "fortuitous," or "attenuated" contacts do not count in the minimum contacts calculus. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). If a party is amenable to general jurisdiction, then it

4

can be said that it has such numerous contacts with the forum that it may be haled into court in that forum even for a suit not arising out of its forum contacts.  *See* Helicopteros, 466 U.S. at 416.

A showing of contacts alone, however, is not enough; a foreign defendant may still defeat jurisdiction by marshaling a compelling case that its exercise would be unreasonable or contrary to concepts of fair play and substantial justice.  Viam Corp., 84 F.3d at 429.  "The test of unreasonableness is a multi-factored balancing test that weighs any burdens on the defendant, against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving conflicts flowing from in-state events."  Id., citing Burger King Corp. v. Rudzewicz, 471 U.S. at 477.  For these reasons, a "plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction."  Molnlycke Health Care AB v. Dumex Medical Surgical Prod., Ltd., 64 F.Supp.2d 448, 450 (E.D. Pa. 1999).

Once defendants' contacts with the forum have been established, the Court considers the following factors in deciding whether to exercise jurisdiction:

>    (1)   the nature and quality of defendants' contacts with the forum state;
>
>    (2)   the quantity of such contacts;
>
>    (3)   the relation of the cause of action to the contacts;

5

>    (4)   the interest of the forum state in providing a forum for its residents; and
>
>    (5)   the convenience of the parties.

Epps, 327 F.3d at 648, citing Burlington Industries, Inc. v. Maple Industries, Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)(addt'l citations omitted).  In applying these factors, the central inquiry is the "relationship among the defendant, the forum and the litigation."  Land-O-Nod Co. v. Bassett Furniture, Inc., 708 F.2d 1338, 1340 (8th Cir. 1983)(quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).

Finally, even where a jurisdictional threshold can be established, "personal jurisdiction may be defeated if its exercise would be unreasonable" and in making this determination, the Court considers factors such as

>    (a) the burden on the defendant; (b) the interest of the forum state; (c) the plaintiff's interest in obtaining relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantive social policy.

Asahi, 480 U.S. at 113-14; Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 374 (8th Cir. 1990).

   B.   Specific Personal Jurisdiction – Specific personal jurisdiction is distinguished from general personal jurisdiction in that specific jurisdiction usually refers to a "situation in which the cause of action arises directly from the defendant's contacts

6

with the forum State." <u>Viam Corp. v. Iowa Export-Import Trading Co.</u>, 84 F.3d 424 (C.A. Fed. 1996).

4.   First, Tyson argues that the Court has general personal jurisdiction over Van Luin.  In support of its position, Tyson argues that:

\*   Since 2004, representatives of Van Luin have traveled to Arkansas on four separate occasions with the intent of exploring future business opportunities.

\*   In December of 2004, representatives of Van Luin met with representatives of both OK Foods, Inc. and Tyson Foods, Inc. and engaged in discussions related to future business opportunities.

\*   In the Summer of 2005, representatives of Van Luin met again with representatives of OK Foods, Inc. to discuss future business opportunities.

\*   In May of 2006, representatives of Van Luin met with representatives of OK Foods, Inc. to discuss future business opportunities using Sea Brothers Chartering.

\*   Van Luin has engaged in business transactions or negotiations relating to business transactions with OK Foods, Inc., located in Fort Smith, Arkansas, on two separate occasions.

\*   In December of 2004 or January of 2005, Van Luin engaged in a transaction or negotiations relating to a transaction with OK Foods for the purchase of 40-60 tons of product for approximately $431,014.00.

7

 * During the time period of June 2006, through August 2006, Van Luin negotiated a transaction with OK Foods for the purchase of approximately 3,827,953 kilograms of product at a cost of approximately $3,463,520.13.

 * On or around April 14, 2006, Van Luin entered into a contract with Tyson for the purchase of 3,000 metric tons of frozen chicken leg quarters at a cost of $0.14 per pound.

 * Van Luin entered into discussions with Tyson on April 6, 2006, regarding the purchase of 7,000 metric tons of frozen chicken leg quarters, at a cost of $0.14 per pound.

 * On or around April 26, 2006, Van Luin entered into a similar set of negotiations with Tyson related to the purchase of 7,000 metric tons of frozen chicken leg quarters, at a cost of $0.22 per pound.

 * Van Luin has also contracted with George's, Inc., located in Springdale, Arkansas, and Simmons Poultry, located in Siloam Springs, Arkansas.

In response to Tyson's arguments, Van Luin argues that its contacts with Arkansas are minimal and do not show the "systematic and continuous" presence required by the law.

This Court agrees. The United States Supreme Court has held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not

8

related to those purchase transactions." <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 418 (1984). *See also* <u>Guinness Import Co. v. Mark VII Distributors, Inc.</u>, 153 F.3d 607 (8th Cir. 1998); <u>Burlington Industries, Inc. v. Maples Industries, Inc.</u>, 97 F.3d 1100 (8th Cir. 1996). Further, it is undisputed that Van Luin is a foreign corporation that is not licensed to conduct business in Arkansas. Van Luin does not own, use or lease any property in Arkansas; and, maintains no offices, facilities, phone numbers or addresses in Arkansas. Van Luin has no employees or representatives in Arkansas, pays no taxes, receives no mail, and has no agent for service of process in Arkansas. For all of those reasons, Tyson's claim of general personal jurisdiction with respect to Van Luin must fail.

5. Tyson also asserts that the Court has specific personal jurisdiction over Van Luin because this action arises directly from purchase negotiations Van Luin entered into with Tyson in the State of Arkansas. In response, Van Luin points to case law which finds that a single contract is insufficient to create jurisdiction over a nonresident buyer. *See* <u>Bell Paper Box, Inc. v. Trans Western Polymers, Inc.</u>, 53 F.3d 920, 922 (8th Cir. 1995).

Again, the Court agrees. In this case, Van Luin submitted a purchase request to Tyson. Tyson contends that despite the purchase request, the parties failed to reach an agreement between the parties and, thus, have no contract on the matter. Nevertheless,

9

Tyson contends that Van Luin's actions with respect to the attempted purchase were sufficient to subject it to specific personal jurisdiction.  The Court does not agree.  The Eighth Circuit Court of Appeals has held that merely entering into a contract with a forum resident fails to provide the requisite contacts between a nonresident defendant and the forum state.  <u>Bell Paper Box, Inc. v. Trans Western Polymers, Inc.</u>, 53 F.3d 920 (8th Cir. 1995).[2]  *See also* <u>Austad Co. v. Pennie & Edmonds</u>, 823 F.2d 223 (8th Cir. 1987); <u>Amana Refrigerations, Inc. v. Quadlux, Inc.</u>, 172 F.3d 852 (Fed. Cir. 1999).

6.    Therefore, for the reasons set forth above, the **Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction (doc. #5)** of Van Luin should be, and it hereby is **granted** and Tyson's complaint against Van Luin is dismissed for want of jurisdiction. And, accordingly, the **Motion for More Definite Statement as to Basis for Subject Matter Jurisdiction (doc. #7)** should be, and it hereby is **denied, as moot.**

IT IS SO ORDERED.

/s/ Jimm Larry Hendren
UNITED STATES DISTRICT JUDGE

---

[2]Tyson attempts to distinguish <u>Bell Paper Box, Inc. v. Trans Western Polymers, Inc.</u>, 53 F.3d 920 (8th Cir. 1995). The Court does not accept Tyson's argument with respect to the holding of <u>Bell Paper</u> as it relies on the dissenting opinion.